**Thomas S. HUNTER et al., Appellants,**

v.

**CENTER MOTORS, INC., Appellee.**

**No. 21230.**

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 6, 1968.

Decided Aug. 23, 1968.

Mr. Clement Theodore Cooper, Washington, D. C., for appellants.

Mr. Frank F. Roberson, Washington, D. C., with whom Mr. Carl L. Taylor, Washington, D. C., was on the brief, for appellee.

Before FAHY, Senior Circuit Judge, and BURGER and McGOWAN, Circuit Judges.

## PER CURIAM:

The circumstances giving rise to this appeal are as follows: A 1958 Ford automobile was purchased from appellee Center Motors by one Hector Hunter in January 1964 pursuant to a conditional sales contract which provided that the car was sold "as is," except for an express undertaking by the seller to pay fifty per cent of the cost of necessary repairs occurring within thirty days of the sale, or during the first 1000 miles of use.[1] The car was subjected to a District of Columbia Auto Inspection and failed because, among other things, the steering alignment, auxiliary brakes, brake equalization, steering operation, axles, wheel bearings and shock absorbers were faulty. The automobile was returned to Center Motors where it was repaired sufficiently to pass the inspection. Some seven and one-half months later the car was again returned to Center Motors by Hunter, who allegedly represented that he did not want the car further because it was a dangerous piece of junk. A judgment was then obtained against Hunter for the amount still due on the contract, and his wages were subject to its satisfaction. Fearful of losing his job, Hunter paid the judgment and took possession once more of the car. Shortly after this, while en route from North Carolina to Washington, the car left the highway and struct a tree. Hunter, who was driving the car, was killed. Appellants brought this action in the District Court seeking recovery for the deaths and injuries suffered by occupants of the auto. They contended that the accident was a result of mechanical defects at the time of sale for which appellee was liable because it failed to discover and remedy or warn of the defects, and because it breached an implied warranty of merchantability and fitness.

Discovery was instituted by appellee, and the record made therein discloses certain conflicts in the testimony as to the cause of the accident. Elmer Armstrong, a passenger in the car, stated that the driver had turned to him and said, "the steering is locked, I can't move the steering wheel;" Armstrong asserts that he told him to "jam on the brakes and he had no brakes." However, a state trooper

---

1. As to the warranty and the passing of the D.C. inspection, Center Motor's attorney made the following statements during the hearing on the motion for summary judgment:

   And the only warranty he had under his contract was he bought it as is, except we will warrant a reduction in price of anything necessary to make it pass D.C. inspection. It failed the D.C. inspection first in 1964, March.

   They brought it back and we did a good deal of work, and it passed the D.C. inspection in April 1964.

   To make it good for 30 days, and to make any reduction in charges for anything necessary to make it pass the D.C. inspection—with some specific exceptions—and they did fulfill that. No dealer in cars can warrant a car driven 14 months, a six-year-old car, is never going to develop any mechanical trouble.

who investigated the accident said that Armstrong had told him four days after the accident that he was asleep at the time of the accident. A passenger in a truck that the car had passed just before the accident also stated that the man sitting in the right front seat, Armstrong, appeared to be asleep, and that the driver was leaning forward over the wheel and his head was bobbing.

After discovery was completed, Center Motors moved for summary judgment, asserting that the discovery record conclusively demonstrated (1) the lack of any substantial evidence that the accident was caused by mechanical failure and (2) even if there were such evidence, appellants could not possibly prove at trial that the failure was caused by defects existing at the time of sale. The District Court, after hearing argument, granted the motion.

The District Court did not say why it was granting summary judgment. There could, in our view, have been at least two independent reasons. One was that there was no material issue of fact as to the accident's having been caused by the driver's going to sleep. The other possibility was that, even if it be assumed that the accident was caused by faulty brakes or other mechanical defects, appellee would inevitably become entitled at trial to a directed verdict on the issue of appellee's responsibility therefor.

As to the first of these, we do not think that summary judgment was warranted. As the District Court was alert to recognize, there were direct conflicts between eye-witnesses as to what caused the collision. Although these conflicts might well be ultimately resolved by a trier of fact in favor of appellee, that result is by no means a certainty in the light of what the testing processes of trial might develop with respect to such things as the truck passenger's opportunity to observe the occupants of the car, and the circumstances under which the boy's post-accident statement to the state trooper was made. Consequently, we do not see how this can be affected on a mo-

tion for summary judgment. A judge considering the cold record of depositions upon a motion for summary judgment may have great powers of predictability as to what will eventuate when the testimony becomes live, but he cannot be sure. The District Court itself in this instance immediately noted this difficulty with appellee's motion for summary judgment; and it expressed an understandable irritation at the failure of appellants' counsel to have identified the matter by following the procedure contemplated in the rules and submitting his own statement of disputed material issues of fact. But the problem was bared and cannot be ignored because of counsel's inattention to it. To the extent that it in fact was resolved by the court against appellants and motivated the grant of summary judgment, the court's action cannot stand. And we have no way of knowing that this was not the case.

It is argued to us strongly on appeal that, even if the boy's testimony be taken to be true and the accident attributed to mechanical defects, appellants could not recover as a matter of law because of the age of the car at the time of sale, the limited nature of the warranty given, the passing by the car of the D.C. inspection after the sale, and the further lapse of a considerable period of time between that event and the accident. The law is far from clear, however, as to what is or should be the obligations of a used car dealer with respect to the physical condition of the car he sells. Apart from contractual warranty, it is obviously not a completely open-ended liability, but we would need more facts than are now available to say whether appellants could make out a case warranting submission to a jury on any theory. Here, appellants have not yet had that opportunity, and we can not say that there is nothing they can prove which would get them to the jury on the issue of liability.

We think we would be in a vastly better position to deal with this question of the applicable rule of law if the District Court made a judgment after having received such evidence as the appellants can

put forth. Thus, since one ground upon which the District Judge may have placed his decision cannot stand in any event, and since the other on which he might have placed his decision could more usefully come after the presentation of appellants' case, we reverse and remand.

It is so ordered.