August J. HOLMQUIST, Appellee,

v.

**VOLKSWAGEN OF AMERICA, INC., a corporation, and Gruber, Porsche/Audi, Inc., a corporation, Appellants.**

No. 2–59109.

Court of Appeals of Iowa.

Nov. 10, 1977.

Review Denied by Supreme Court Dec. 16, 1977.

Tom Riley, of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellee.

Ralph W. Gearhart and Caryl W. Garberson, of Shuttleworth & Ingersoll, Cedar Rapids, for appellant, Volkswagen of America, Inc.

Benjamin W. Blackstock, Cedar Rapids, for appellant, Gruber, Porsche/Audi, Inc.

Heard by ALLBEE, C. J., and DONIELSON, SNELL and OXBERGER, JJ.

SNELL, Judge.

Defendants appeal judgment rendered for plaintiff in the amount of $498,000. A jury found defendants liable for plaintiff's injuries arising out of the manufacture and sale of a defective product. The product was a 1970 Porsche 914 automobile. The case was predicated on the theory of strict liability.

Plaintiff August J. Holmquist was riding as a passenger in the Porsche automobile when it left the road and overturned. The vehicle was being driven by the owner, Judith A. Kilmer. She purchased the car four days earlier from defendant, Gruber, Porsche/Audi, Inc., the authorized dealer for Volkswagen of America, Inc., in Cedar Rapids. Defendant, Volkswagen of America, Inc., manufactured the car. At the time of the accident, the car had been driven 229 miles.

The accident occurred on April 4, 1970, at about 1:50 a. m. The night of the accident Kilmer was a guest at a party hosted by plaintiff at his home in Cedar Rapids. Among the people present were radio announcers from the radio station in Cedar Rapids where plaintiff was employed and their friends. Kilmer invited plaintiff to go for a ride in her new automobile and the two left plaintiff's home between 12:30 and 1:00 a. m. The trip was intended to be short. Kilmer wanted to get home since she had to go to work the next morning. Weather conditions were excellent. The pavement was dry and there was no precipitation.

Kilmer and plaintiff drove several miles through Ellis Park on Ellis Road. She turned the automobile around for the ride back to plaintiff's home. The return trip was made on the same roadway which was designated a County Highway and was surfaced with asphalt.

The road curved slightly to the left on the first leg of an "S" curve, then proceeded a short distance on a straight segment, slightly downgrade, after which it curved sharply to the right. Kilmer drove the car successfully through the first leg of the "S" curve but was unable to maintain the car on the road when it turned to the right. The car went off the left-hand side of the road and overturned. Kilmer and plaintiff were both injured. Plaintiff sustained a broken leg and other injuries. He suffered a loss of blood to the extent he had no blood pressure or pulse on admission to the hospital.

At the time of the accident, plaintiff was a paraplegic, the result of being shot in the back seven years earlier. He was paralyzed below the tenth thoracic vertebra at which level the spinal cord was severed by the gunshot. He was able to get about by use of his wheelchair and a specially equipped car. The injuries received in the automobile accident consisted of multiple fractures of the pelvis and lower right leg. Subsequently it was discovered he had a severed urethra; however, there was dispute whether it occurred in the accident or before. Due to the fractures and complications ensuing from the paralysis, plaintiff's right leg was amputated between the knee and hip. Plaintiff also developed decubitus ulcers which required skin grafting.

Defendants appeal the judgment on the ground their motion for judgment notwithstanding the verdict should have been granted or alternatively, a new trial ordered. The following issues are raised on appeal.

1. Judgment should have been directed in their favor because plaintiff failed to establish a defect in the automobile, and that the alleged defect was a proximate cause of the accident. Further, the recall campaign of defendants was not evidence of a defect or of a proximate cause of the accident.

2. Error was committed by the trial court in refusing to allow testimony by defendants' expert witness, Severy.

3. The verdict of $498,000 was excessive and not supported by the evidence.

4. The trial court abused its discretion in failing to grant defendants a new trial.

 I. We consider together the matters relating to directing a verdict or judgment n. o. v. for defendants. The supreme court discussed the theory of strict liability in 1970 in *Hawkeye Security Insurance Co. v. Ford Motor Co.*, 174 N.W.2d 672 (Iowa 1970). In that case the principles found in Restatement (second) of Torts § 402A (1965) were adopted. Liability of the seller of a product for physical harm to the user or consumer is predicated on the proposition that one who sells any product in a defective condition, unreasonably dangerous to the user or consumer, or to his property, is subject to liability for physical harm thereby caused to the ultimate user or consumer or to his property if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

 The elements essential to establish a cause of action under this standard are: 1) sale of a product by the defendant, 2) the product was in a defective condition, 3) the defective condition was unreasonably dangerous to the user or consumer, 4) the seller was engaged in the business of selling such a product or products, 5) said product was expected to and did reach the user or consumer without substantial change in condition; i. e., the defect existed at the time of sale, 6) said defect was the proximate cause of personal injuries or property damage suffered by the user or consumer, and 7)

damages suffered by the user or consumer. *See Kleve v. General Motors Corp.*, 210 N.W.2d 568, 570–71 (Iowa 1973).

 The rule of strict liability in tort applies to a retailer as well as to the manufacturer of a defective product. *Vandermark v. Ford Motor Co.*, 61 Cal.2d 256, 37 Cal.Rptr. 896, 899–890, 391 P.2d 168, 171–72 (1964); *Kleve v. General Motors Corp.*, supra. Thus, the doctrine applies to both defendants in the instant case.

Defendants claim the second and sixth elements for proving a strict liability case have not been met by plaintiff. They assert there is insufficient evidence to create a jury question that a defect was present in the Porsche automobile as claimed by plaintiff, and that the defect was the proximate cause of the accident. The defect relied on by plaintiff was in the steering apparatus.

 In considering these questions, we view the evidence in the light most favorable to plaintiff. Rule 14(f)(2), Rules of Appellate Procedure. Viewed thusly, a jury could find the following facts: the automobile purchased by Judith Kilmer from defendant Gruber was four days old at the time of the accident and had been driven 229 miles. Kilmer noticed prior to the accident that the steering wheel turned hard and made an unusual clicking sound when the wheel was turned; she had complained to the defendant Gruber about these matters. Another witness, Clair Keyton, drove the car before the accident, observed it steered hard, heard a funny grinding sound and felt a vibration when she turned the steering wheel.

Immediately prior to the accident, when Kilmer was with plaintiff, she had trouble making a "U" turn due to the difficulty with the steering wheel. After making the "U" turn she headed back to Cedar Rapids, traversing a curve to the left. In trying to turn the steering wheel back to negotiate the right turn of an "S" curve, she found it would not turn. This caused her car to leave the roadway and turn over. The speed of the automobile at the time of the accident was between 40 and 45 miles per hour and within the legal limit.

After the accident, an investigator, Lester J. Burianek, tested the steering wheel and found it would stick or bind when turned to the right after being turned as far left as possible. A few days later a mechanic engaged by defendants tightened the retaining bolts on the steering mechanism of the car. Several turns with a torque wrench were made on the bolts. This was done before the car was examined further or road tested. After the bolts were tightened Burianek again tested the steering wheel and found the sticking or binding was gone. A recall letter sent by defendant Gruber to Kilmer which arrived after the accident advised that the retaining bolts for the steering gear should be checked for tightness. Other evidence indicated that under continued driving the retaining bolts may loosen, resulting in a serious impairment of steering control.

Defendants point out that no expert witness on behalf of plaintiff testified as to the claimed defect in the steering mechanism or that the condition of the retaining bolts, even if defective, could have caused the accident. Defendants further assert that the recall campaign is not evidence of any probative value nor does the rest of plaintiff's evidence amount to a quantum of proof sufficient to create a jury issue.

In *Kleve v. General Motors Corp.*, 210 N.W.2d 568 (Iowa 1973), plaintiff alleged that the steering on his automobile was defective and that when he tried to turn the steering wheel to the right, something stuck which made the turn impossible. He attempted to free the steering wheel by turning left sharply and then jerking to the right. He couldn't bring it back because the mechanism locked. The car went into a ditch, plaintiff was injured and the car wrecked. Expert testimony regarding the steering assembly was offered on behalf of plaintiff but was stricken on objection. Thereafter, the trial court sustained a motion for directed verdict. The supreme court noted that while a plaintiff must prove the product defective when it left the seller's hands, such proof need not rest upon direct evidence. It can be and is usually established by circumstantial evidence.

The court held error was committed in striking all the testimony of plaintiff's expert. Additionally, the court determined that plaintiff's testimony as to his bizarre experience with the steering system coupled with the proffered expert testimony served to circumstantially create a strict liability jury issue.

In *MacDougall v. Ford Motor Co.*, 214 Pa.Super. 384, 257 A.2d 676 (1969), a 1962 Comet station wagon owned and driven by appellees was involved in a turnpike accident. Appellees presented evidence by the deposition of plaintiff-driver and an expert witness. Plaintiff testified she had difficulty keeping the car on an even course. The steering wheel did not respond the way she expected it to. Sometimes the steering seemed loose, sometimes it would stick. As she was passing another car, the steering difficulty became more severe, she lost control and the car rolled over on the berm.

The expert found three specific mechanical defects. Metal flakes were present in the gear box, the bearing on the steering shaft was tight and the high point on the sector shaft was adjusted too tightly. The expert gave no opinion as to whether the metal flakes or tight bearings prompted the accident, but suggested that the adjustment to the sector shaft would very likely have caused the accident. Appellant argued a failure to meet the burden of proof of causation occurred because the expert did not state unequivocally that the specific defects in the steering assembly were the cause of the accident. In rejecting appellant's contention, the court analyzed the requirements of strict liability under Restatement (second) of Torts § 402A (1965).

The Pennsylvania court found that actions under § 402A are governed by the evidentiary standards of warranty law rather than negligence. Under those standards, the occurrence of a mechanical malfunction evidences a defective condition without proof of the specific defect in design or assembly causing the malfunction. The court noted plaintiffs in warranty actions have established a malfunction and

sustained liability in the absence of proof of a specific defect. The court held the occurrence of a malfunction of machinery in the absence of abnormal use and reasonable secondary causes is evidence of a defective condition within the meaning of § 402A, as it is evidence of lack of fitness for warranty liability.

Plaintiff MacDougall's testimony of the erratic steering action, both before and when the accident occurred, established a mechanical malfunction in the absence of abnormal use which prevented her from maintaining control of the car. The court found the most reasonable inference to be drawn from this proof is that a defective condition in the car proximately caused the accident, hence the issue of causation was properly left to the jury. The court added the expert's testimony that improper adjustment to the shaft would produce the precise steering aberrations experienced by appellees lent definite additional support to the inference. It is clear, however, the expert's testimony was not required to establish the quantum of proof necessary to create a jury issue.

*Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 161 A.2d 69 (1960), concerned an automobile buyer's wife who sued the manufacturer and dealer for damages on account of injuries sustained while she was driving the automobile. She testified she heard a loud noise from the bottom by the hood and it felt as if something cracked. The steering wheel spun in her hands, the car veered sharply to the right and crashed into a brick wall. The car was so damaged it was impossible to determine if any of the parts of the steering wheel mechanism, workmanship or assembly were defective, or improper, prior to the accident. The expert testimony was that "something down there had to drop off or break loose" to cause the steering malfunction. Clearly this was insufficient to link the accident with a specific defect in design or assembly. Nevertheless, liability was established.

In *Caldwell v. Fox*, 394 Mich. 401, 231 N.W.2d 46 (1975), the original defendant, Patrick Fox, was involved in a rear-end accident when the brakes on his car failed. After the collision he observed brake fluid on the fenderwall, a loose connection on the brakeline and brake fluid dripping from the loose connection. Although there was no showing of a specific defect, the court held a jury could have reasonably inferred the existence of a defective condition in the brake system caused the accident. Here also there was no expert testimony on behalf of plaintiff. There was, however, a written admission attributable to a third party defendant from which the jury could have found the existence of a defective master cylinder and inoperative brakeline, which caused the loss in braking power. These facts were contradicted by other evidence, but the court found it was for the jury to weigh the evidence and resolve the contradictions.

In *Glynn Plymouth, Inc. v. Davis*, 120 Ga.App. 475, 170 S.E.2d 848 (1969), the wife of the driver testified her husband was approaching a railroad crossing with blinking lights, he applied the brakes, the car started to shake and chatter and went completely out of control. There was no direct testimony either the suspension system was improperly attached or the brake drums were out of round. The wife's testimony was muted by the testimony of the investigating officer who stated the driver made no complaint or statement to him as to any malfunction of the vehicle at the time of the accident. He quoted the driver as saying he really didn't know what happened. He applied the brakes and the car started jumping down the road. The wife subsequently disposed of the car in another state making it unavailable for examination or testing by defendants. A presumption against her case was thus raised. Nevertheless the court stated: "Consequently, while the evidence was weak, particularly in the light of the presumption, we conclude that it was for the jury to resolve the question of whether there was an out-of-round condition in the brake drum." *Glynn Plymouth, Inc.*, supra at 853. The court further held her testimony would be sufficient to carry the case to the jury on the question of proximate cause.

A passenger in the car involved in *Hunter v. Center Motors, Inc.,* 130 U.S.App.D.C. 315, 400 F.2d 786 (1968), quoted the driver as saying "The steering wheel is locked, I can't move the steering wheel." The passenger told him to jam on the brakes and he had no brakes. This testimony was countered by evidence the passenger was asleep at the time and the driver was leaning forward over the wheel with his head bobbing. The circuit court reversed the granting of defendants' motion for summary judgment holding the conflict should have been resolved by the trier of facts.

*Sabloff v. Yamaha Motor Co., Ltd.,* 113 N.J.Super. 279, 273 A.2d 606 (N.J.App.Div. 1971), involved a motorcycle accident. Plaintiff was travelling on his motorcycle about 25 miles an hour. Suddenly the front wheel stopped turning, the cycle went out of control and crashed. Plaintiff's expert testified as to two possible theories of causation: 1) the human factor in activating the brakes and 2) a mechanical error in too much sideplay in the wheel. The appellate division found a jury issue was engendered.

In affirming, the New Jersey Supreme Court, 59 N.J. 365, 283 A.2d 321 observed "We add that whenever the facts permit an inference that the harmful event ensued from some defect (whether identifiable or not) in the product, the issue of liability is for the jury, and the plaintiff is not necessarily confined to the explanation his expert may advance." *See also, General Motors Corp. v. Dillon,* 367 A.2d 1020 (Del.Supr. 1976); *Tweedy v. Wright Ford Sales, Inc.,* 64 Ill.2d 570, 2 Ill.Dec. 282, 357 N.E.2d 449 (1976), where plaintiff's case was submitted to the jury without expert testimony, and *Lynd v. Rockwell Manufacturing Co.,* 554 P.2d 1000 (Or.1976), where the court held it was error to direct a verdict for defendant where plaintiff failed to present expert testimony even though the case was premised on negligent design.

■ In the case at bar the jury was also entitled to consider the changes made by defendants in tightening the retention bolts on the Porsche automobile after the accident. This act was apparently unauthorized by plaintiff or Kilmer. It had the effect of denying plaintiff the opportunity to examine the car regarding this specific defect. Apropos to this occurrence is the statement by the Georgia court in *Greer v. Andrew,* 138 Ga. 663(3), 75 S.E. 1050 (1912): "Spoliation of evidence raises a presumption against the spoliator."

■ Exhibit 40 relating to defendant's recall campaign came into evidence without objection. It was a sample letter to customers composed by defendant Volkswagen for use by dealers such as defendant Gruber. The following paragraph appeared:

> The Porsche factory advised us that the retaining bolts for steering gear and the lock rings should be reviewed. Under continued driving, these bolts may loosen, resulting in a serious impairment of steering control.

Defendants contend this evidence has no probative value. Certainly it does not prove a specific defect in Kilmer's car. It does, however, show the result of loosened bolts, i. e., a serious impairment of steering control. As such, it is entitled to full probative value by the jury. *See Walker v. City of Clinton,* 244 Iowa 1099, 59 N.W.2d 785 (1953); *Punelli v. Punelli,* 260 Iowa 549, 149 N.W.2d 784 (1967).

> In *Reid v. Automatic Electric Washer Co.,* 189 Iowa 964, 976, 179 N.W. 323, 328, we said: 'It is the general rule that a material fact at issue may be established by hearsay evidence, where the same is admitted without objection.'

*Walker,* supra at 1111.

The Iowa Court many years ago indicated the approach for determining if a jury issue had been established in a products liability case. In *State Farm Ins. Co. v. Anderson-Weber,* 252 Iowa 1289, 1301-2, 110 N.W.2d 449, 456, (1961) the court concluded:

> Brakes should not be defective from the beginning. Steering mechanism should not fail, nor cars burn up within 10 days. When such things happen and there is evidence as to the cause, courts should be reluctant to deny the purchaser the right to submit his claim to a jury.

Further, in *Federated Mut. Imp. & H. Ins. Co. v. Dunkelberger*, 172 N.W.2d 137, 144 (Iowa 1969), the court stated:

> Generally the question of proximate cause is for the jury; it is only in exceptional cases that it may be decided as a matter of law.

From a review of all the evidence and the standards established by the cited authorities we hold plaintiff established sufficient facts for the submission to the jury of the question of liability under the strict liability theory.

II. Defendants offered the testimony of Derwyn Severy as an expert witness. Severy, a research engineer who has specialized in human factors engineering, was prepared to express his opinion of what happened based on his study of the facts surrounding the accident. Plaintiff's objection on the ground of improper foundation was sustained.

The trial court clearly set forth the reason for its ruling:

> We're not dealing with a situation where we had measurements made. We're dealing with a situation where most of the physical facts you include in your hypothetical are estimates arrived at years afterward by people who were there but made no effort to make exact measurements. Nobody seemed to think the accident was worthy of any sort of investigation at the time. They so testified. The policemen were admittedly not investigating. Deputy Fiser stated that he didn't make any of the measurements or do any of the things he normally does because it was so obvious to him what happened. I mean, that's what bothers me about eliciting an expert opinion on these matters as we are dealing with such vague, general, ambiguous—and I think there are some contradictions in some of the facts you include in your hypothetical.

Iowa is committed to a liberal rule which allows opinion testimony if it is of a nature to aid the jury and is based on special training, experience, or knowledge with respect to the issue in question. *Hau-*

*mersen v. Ford Motor Co.*, 257 N.W.2d 7 (Iowa 1977). However, sufficient data must appear upon which an expert judgment can be made, and if absent, the opinion is incompetent. *See Lessenhop v. Norton*, 261 Iowa 44, 153 N.W.2d 107, 114 (Iowa 1967). The receipt of opinion testimony rests largely in the discretion of the trial court and its ruling will not be disturbed absent manifest abuse of that discretion. *Haumersen*, supra.

In *Bernal v. Bernhardt*, 180 N.W.2d 437 (Iowa 1970), a new trial was granted on appeal because the trial court allowed a witness to testify as an expert who was not properly qualified and who failed to state a sufficient factual basis for his opinion. Although abuse of discretion was not found in *Haumersen*, the admission of the expert's opinion "went to the outer limits of the trial court's discretion." *Haumersen v. Ford Motor Co.*, supra.

In the case at bar there was no abuse of discretion in sustaining the objection to Severy's opinion testimony.

III. Defendants next assert the verdict of $498,000 was flagrantly excessive and not supported by the greater weight of the evidence. On appeal the question is not whether this court would have awarded the amount of damages found by jury. It is not for us to invade the province of the jury. The criteria established for appellate review is that a verdict will not be set aside or altered unless it is 1) flagrantly excessive or inadequate, or 2) so out of reason as to shock the conscience or sense of justice, or 3) raises a presumption it is the result of passion, prejudice or other ulterior motive, or 4) is lacking in evidential support. *Schmitt v. Jenkins Truck Lines, Inc.*, 170 N.W.2d 632, 659 (Iowa 1969). In *Schmitt*, the court noted:

> It should not be forgotten that determination of amount of damages, particularly in actions of this nature, is primarily and peculiarly within the province of the jury, under proper instructions, and courts should be and are reluctant to

interfere with the conclusion of the jury when fairly made.

170 N.W.2d at 665.

The injuries sustained by plaintiff Holmquist were severe. He had multiple fractures of the right leg and pelvis and ultimately underwent an amputation of his right leg. A severed urethra was also discovered. Although it was disputed by defendants that this occurred in the accident, there was, nevertheless, sufficient proof for the jury to properly consider it.

Plaintiff was confined to bed, flat on his back for six weeks, due to the pelvic fracture. He developed various ulcers which required treatment. He had an ulcer at the site of the coccyx bone and developed an ulceration of the stump where his leg was removed. The pelvic fracture also caused a difference in weight pressures which resulted in a decubitus ulcer development on the right buttocks and three ulcers on the left ankle. Plaintiff spent five months in bed trying to heal the decubitus ulcer on his right buttock. Ultimately, skin grafting was necessary. The prognosis is that plaintiff will continue to have a series of breakdowns of skin with more decubitus ulcers resulting.

Plaintiff is unable to walk with crutches or braces due to the paralysis and amputation between the hip and knee. With the amputation plaintiff also lost the hope he had entertained that at some time medical science would find a cure for his paralysis so he could walk again. He has had considerable pain and suffering and mental anguish due to these injuries. There was evidence of a more difficult adjustment for plaintiff after the amputation than after the paralysis.

Medical and hospital expenses of plaintiff at time of trial amounted to $11,298.07. He also sustained a loss of earnings in the amount of $32,890.00. A loss of future earnings of $227,240.00 was in evidence. Plaintiff at the time of trial, was 27 years old and had a life expectancy of 43.99 years.

Defendants contend there was no evidence to support the assertion plaintiff has sustained a future loss of earnings. In tort cases for personal injuries, impairment of future earning capacity is a distinct item of damage. *Carradus v. Lange*, 203 N.W.2d 565 (Iowa 1973). Such impairment is measured by the present value of the loss or impairment of general earning capacity, rather than loss of wages or earnings in a specific occupation. *Grant v. Thomas*, 254 Iowa 581, 585, 118 N.W.2d 545, 548 (1962). In determining the amount of loss, consideration may be given to evidence of wages and earnings of plaintiff prior to the injury. *Anthes v. Anthes*, 258 Iowa 260, 139 N.W.2d 201 (1965).

In *DeWall v. Prentice*, 224 N.W.2d 428, 435 (Iowa 1974), the supreme court quoted with approval from 22 Am. Jur.2d Damages § 92 at 134: "[The damage] is based upon capacity to earn, not on earnings alone." Impairment of physical capacity creates an inference of lessened earning ability in the future. Medical testimony is, of course, admissible in support of this element of damage but not always essential. The basic element to be determined in the matter of claimed impairment of future earning capacity is the reduction in value of the power to earn, not the difference in earnings received before and after the injuries. 22 Am.Jur.2d Damages § 94 at 136.

> There is no requirement such loss need be measured in a vacuum: ordinarily considered are plaintiff's poor health, education, and opportunity for education, age, intelligence, industriousness, manner of living, sobriety or temperance, frugality or lavishness or other personal characteristics which affect ability to secure business or earn money.

*Ehlinger v. State*, 237 N.W.2d 784, 792 (Iowa 1976). We find the evidence adduced was sufficient for the jury to consider future loss of earning capacity of plaintiff.

Other damage elements such as injuries to the person, pain and suffering and total disability are incapable of pecuniary measurement by witnesses and must be left to the sound judgment of the fact finder based on the evidence. *Schnebly v.*

*Baker*, 217 N.W.2d 708, 725 (Iowa 1974). The pain and suffering which the law allows is not confined to mere physical aches. It includes as well the mental anguish, the sense of loss and burden and the inconvenience and embarrassment which a person who is materially crippled or disabled in body or limb can never escape. *Rice v. Council Bluffs*, 124 Iowa 639, 642, 100 N.W. 506 (1904).

■■■■■ Defendants cite specific cases in an attempt to compare size of verdicts for personal injuries. The supreme court has recently noted comparison of verdicts is of little value in determining whether an award in a particular case is excessive. Each case must be evaluated according to the evidence peculiar to it alone. *Fetters v. City of Des Moines*, 260 Iowa 490, 149 N.W.2d 815, 821 (1967). *Haumersen*, supra. We also note the trial court in the interest of justice could have granted a new trial if it had determined the verdict was excessive. This it declined to do. We give weight to the fact the trial court, with the benefit of seeing and hearing the witnesses, after observing the jury and having before it all incidents of the trial, did not see fit to interfere. *Olsen v. Drahos*, 229 N.W.2d 741, 743 (Iowa 1975).

■■■■ From a review of the record, we hold the jury verdict on damages is within the scope of the evidence adduced and there is, therefore, no reason to disturb the jury's award.

IV. As a final assignment of error, defendants assert it was an abuse of trial court discretion to deny a new trial. This assignment claims the jury disregarded the weight and sufficiency of the evidence and a miscarriage of justice ensued.

Defendants lay heavy stress on the testimony of their experts that even if the retention bolts were loose, the steering would not have been adversely affected. Of course plaintiff's case is not circumscribed, as defendants would have it, to a defect in the retention bolts. The defect relied on and on which the verdict rests is in the steering mechanism, a broader concept to which plaintiff's evidence applies.

■■■ Defendants note the appellate court is more reluctant to interfere with the granting of a new trial than with its denial. R.App.P. 14(f)(3). But the granting of a new trial may also be an abuse of discretion. *Lappe v. Blocker*, 220 N.W.2d 570 (Iowa 1974); *Riley v. Wilson Concrete Co.*, 184 N.W.2d 689 (Iowa 1971).

Of particular relevance on the substitution of the judge's view for the jury's is *Lantz v. Cook*, 256 Iowa 409, 413, 127 N.W.2d 675, 677 (1964):

> In jury trials controverted issues of fact are for the jury to decide. That is what juries are for. To hold that a judge should set aside a verdict just because he would have reached a different conclusion would substitute judges for juries. It would relegate juries to unimportant window dressing. That we cannot do.
>
> · · ·
>
> The record discloses no prejudicial error in the trial. The verdict was within the evidence. The jury has spoken. The parties had a fair trial. The court may not arbitrarily substitute its opinion for the conclusion of the jury.

■■■ This language applies equally well to the case at bar. The record shows the motion for new trial was thoroughly briefed by the parties and well considered by the trial court. We hold its denial was not an abuse of discretion.

Affirmed.

CARTER, J., takes no part.