Ricky A. JAMES, Appellee,

v.

SWISS VALLEY AG SERVICE, Swiss Valley Farms Co., The Gates Rubber Company, Defendants,

AMF BRD, Inc., Appellant.

No. 88–1305.

Court of Appeals of Iowa.

Oct. 24, 1989.

Wayne C. Collins and Diane Kutzko of Shuttleworth & Ingersoll, Cedar Rapids, for appellant AMF.

Hugh Albrecht of Tom Riley Law Firm, Cedar Rapids, for plaintiff-appellee.

Heard by DONIELSON, P.J., and SCHLEGEL and HABHAB, JJ.

HABHAB, Judge.

In this interlocutory appeal, appellant AMF BRD, Inc. appeals the district court's denial of its motion for summary judgment. We reverse in part and affirm in part.

On June 15, 1985, Ricky James, a farmer, was in the process of applying anhydrous ammonia to his crops. He was using equipment rented from Swiss Valley Ag Service and Swiss Valley Farm Services. His task involved transferring the ammonia from a large pressure vessel or "nurse

tank" to a smaller, tractor-drawn applicator tank. While he was doing this, a rubber hose attached to the "nurse tank" ruptured and sprayed anhydrous ammonia on him. He suffered burns therefrom.

James filed the present product liability suit against the two Swiss Valley defendants, against the manufacturer of the rubber hose, and against appellant AMF BRD, Inc., the manufacturer of the nurse tank itself. In his claims against AMF BRD, Inc., James alleged that the tank was defectively designed and manufactured because it contained no relief valves to reduce pressure and also because it had no water tank to allow the immediate washing of injuries.

AMF BRD filed a motion for summary judgment, alleging there was no evidence that its manufacture of the tank was defective. In support of this motion, AMF BRD alleged the following facts, among others: (1) The tank was manufactured in 1968, seventeen years before the injury and thirteen years before the promulgation of certain engineering safety standards relied on by the plaintiff; (2) The plaintiff's own expert had opined that there was no engineering flaw in the nurse tank which caused the rupture of the hose. In addition to its motion for summary judgment, AMF BRD filed a motion asking that James be sanctioned under Iowa Rule of Civil Procedure 80 for filing a claim not well grounded in law or fact.

The district court denied AMF BRD's motion for summary judgment and also its motion for rule 80 sanctions. To challenge this ruling, AMF BRD sought and obtained permission for the present interlocutory appeal.

AMF BRD contends it is entitled to summary judgment because there is no genuine issue of material fact concerning its liability as manufacturer. AMF BRD also contends the district court abused its discretion by refusing to impose rule 80 sanctions. AMF BRD contends such sanctions are warranted because James and his counsel failed to make an adequate factual investigation before suing AMF BRD, and because they pursued the claim after learning of the facts which allegedly protect AMF BRD from liability.

## I.

Our review is on errors assigned. Iowa R.App.P. 4. In ascertaining whether summary judgment (Iowa R.Civ.P. 237(b)) is appropriate, we apply the following standards:

> Summary judgment is proper when there is no genuine issue of fact and the moving party is entitled to the judgment as a matter of law. The burden of showing the nonexistence of a material fact is upon the moving party. While an adverse party generally cannot rest upon his pleadings when the moving party has supported his motion, summary judgment is still not proper if reasonable minds could draw different inferences and conclusions from the undisputed facts. In this respect, summary judgment is functionally akin to a directed verdict; every legitimate inference that reasonably can be deduced from the evidence should be afforded the nonmoving party, and a fact question is generated if reasonable minds can differ on how the issue should be resolved.

*Martinko v. H–N–W Associates*, 393 N.W.2d 320, 321 (Iowa 1986) (quoting *Knapp v. Simmons*, 345 N.W.2d 118, 121 (Iowa 1984)).

Our rule 237(b) has essentially the same provision as Federal Rule of Civil Procedure 56. The Iowa Supreme Court has on a number of occasions held that:

> Because our rule 237 is patterned on rule 56, Federal Rules of Civil Procedure, federal interpretations are persuasive.

*Brody v. Ruby*, 267 N.W.2d 902, 904 (Iowa 1978); *see Sherwood v. Nissen*, 179 N.W.2d 336, 339 (Iowa 1970).

The Iowa Supreme Court recently adopted the federal standard for summary judgment as set out in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244, 106 S.Ct. 2505, 2508, 91 L.Ed.2d 202, 209 (1986). See *Behr v. Meredith Corp.*, 414 N.W.2d 339, 341 (Iowa 1987). In *Anderson*, the United States Supreme Court held that the standard for summary judgment is the same as

upon directed verdict. 477 U.S. at 251, 106 S.Ct. at 2512, 91 L.Ed.2d at 214. As the Court in *Anderson* further stated:

> The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict. Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.

477 U.S. at 256, 106 S.Ct. at 2514, 91 L.Ed.2d at 217.

■ When a movant for summary judgment satisfies the initial burden of production, the burden shifts to the party opposing the motion for summary judgment, who then must set forth specific facts showing that there is a genuine issue for trial. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2516, 91 L.Ed.2d at 213. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 274 (1986).

In *Catrett,* the United States Supreme Court stated:

> The Federal Rules of Civil Procedure have for almost 50 years authorized motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact. Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Before the shift to "notice pleading". accomplished by the Federal Rules, motions to dismiss a complaint or to strike a defense were the principal tools by which factually insufficient claims or defenses could be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources. But with the advent of "notice pleading," the motion to dismiss seldom fulfills its function any more, and its place has been taken by the motion for summary judg-

ment. Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

477 U.S. at 327, 106 S.Ct. at 2555, 91 L.Ed.2d at 276 (citations omitted).

■ Here, AMF BRD properly pled and supported its motion for summary judgment with a statement of undisputed facts. Under rule 237, the burden then shifted to plaintiff to produce or present specific, material facts to show that there is a genuine issue of material fact. *See Behr,* 414 N.W.2d at 342; *Martinko,* 393 N.W.2d at 321; *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514, 91 L.Ed.2d at 217. We conclude that the plaintiff failed to sustain that burden.

Plaintiff-appellee's engineering expert, Dean Michael Lewis, testified at his deposition as follows:

> Q. Maybe we can shorten this up considerably. Have you ever expressed any opinion to anybody that there was anything wrong with the design or manufacture of the nurse tank in this case that was an engineering cause of the incident involving Mr. James? A. No.
>
> \* \* \* \* \* \*
>
> Q. Have you ever told the people that hired you that the tank manufacturer was in some engineering way—that they did something or that they failed to do something from an engineering standpoint that proximately caused the rupture of the hose and whatever injury Mr. James sustained? A. No, I've never made such a statement.
>
> \* \* \* \* \* \*
>
> Q. To a reasonable degree of engineering certainty at that time was it your opinion that the nurse tank was involved or related to the rupture of the hose and the cause thereof? A. Okay. I understand your question.

Q. Do you follow me? A. Yeah, I understand your question better, and the answer to that is no.

Q. Have you ever told the people that hired you that from an engineering standpoint the whole situation involves what you described, I believe, as the hose and the attachments; what it did or didn't have? A. Have I ever explained that to them?

Q. Yes. A. Yes.

\* \* \* \* \* \*

Q. Can you think of any information that you have developed in your investigation—either on site examining the equipment, talking to the Fertilizer Institute, reading these various documents and so on—that would lead you to a reasonable degree of engineering certainty that the nurse tank was the cause or a cause of what occurred to Mr. James? A. No, I don't believe so.

■ Mr. Lewis's testimony fails to point out any design flaws in the nurse tank. Similarly, appellee's reliance upon section 2.9, American National Safety Institute, American National Standard Safety Requirements for Storage and Handling of Anhydrous Ammonia (1981) is misplaced. While this section does require pressure relief devices on certain anhydrous ammonia containers, it was published some thirteen years after the manufacture of the nurse tank. As a result, the safety standards encompassed there are irrelevant to the determination at hand. *See Oberreuter v. Orion Industries, Inc.*, 398 N.W.2d 206, 210 (Iowa App.1986); *Aller v. Rodgers Mach. Mfg. Co.*, 268 N.W.2d 830, 841 (Iowa 1978). Therefore, these standards do not engender a material fact question.

The appellee points to Mr. Lewis's bald statement in his deposition that "I think there should be water tanks on that nurse tank." Absent more information, particularly considering Mr. Lewis's aforementioned deposition testimony, this curt statement does not give rise to a material fact question.

We note, for purposes of this opinion, the following comment made by the trial court in its ruling:

Mr. Lewis states in his answer to Interrogatory No. 29 the lack of a relief valve was a violation of Sections 2.8.4 and 2.9.-10 (not 2.9.1). Also, he makes general statements in his deposition critical of the failure to supply a water tank with the nurse tank and states his belief that the Fertilizer Institute's instructions require a water tank on the nurse tank. The failure to supply a water tank with the nurse tank, however, was not stated in Mr. Lewis' answer to Interrogatory No. 29. The emphasis of the answer and his deposition testimony declares his expert opinion that the primary cause of the explosion was the pressure buildup in the hose from the liquid ammonia left in the hose which was not equipped with a relief valve as required by several safety standards. The plain meaning of Mr. Lewis' testimony strongly suggests that there is no basis for finding a causal relationship between AMF BRD, Inc., as the manufacturer of the nurse tank in this case, and the injuries sustained by the Plaintiff.

The trial court went on to say:

[H]owever the Court is required to examine the entire record in the light most favorable to the Plaintiff and an in-depth examination yields factual questions regarding AMF BRD, Inc.'s possible liability to the Plaintiff.

The trial court did not alert the parties to what factual issues were in dispute nor did the plaintiff in his resistance to the summary judgment motion. It is clear that "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient...." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.

As we set forth above, the trial court found that the plain meaning of Mr. Lewis's testimony strongly suggests that there is no basis for finding a causal relationship between AMF BRD, Inc., as the manufacturer of the nurse tank, and the injuries sustained by the plaintiff. We agree with this finding. The plaintiff designates Dean Lewis as his only liability expert.

As it relates to expert testimony or the lack thereof, we held in *Wernimont v. International Harvestor Corp.*, 309 N.W.2d 137 (Iowa App.1981), that when technical issues are involved (issues beyond common knowledge and experience) in a products liability or a products-related case, expert testimony is required to generate a jury issue. *Id.* at 141. In sustaining the trial court's granting of a directed verdict, we stated:

> However, we begin with the obvious conclusion that in design cases involving sophisticated issues of technological possibility, a plaintiff cannot engender a jury issue as to negligence, product defect (as regards strict liability in tort), or product defect (as regards implied warranties of fitness or merchantability) simply with evidence describing the design of the product, photographic exhibits and models depicting what the product looked like, photographic exhibits and models showing that competitive lines of the same product are designed somewhat differently, and argument of counsel that the product is unreasonably dangerous.

*Id.* at 142.

Since we find no material fact question existed as to a design defect in the nurse tank, the appellant was entitled to judgment as a matter of law. Therefore, the trial court erred in not granting appellant's motion for summary judgment.

## II.

Appellant also argues that the trial court erred in not granting it sanctions pursuant to Iowa Rule of Civil Procedure 80(a). While we view this as an extremely close call, we do not believe sanctions under rule 80(a) are appropriate here. It cannot go unnoticed that the plaintiff did receive a favorable ruling from the trial court.

REVERSED IN PART AND AFFIRMED IN PART.