Kenneth HILLRICHS and Loretta Hill-richs, Individually and as Natural Mother and Next Friend of Melissa Hillrichs, a Minor; Christine Hillrichs, a Minor; Jennifer Hillrichs, a Minor; and Steven Hillrichs, a Minor, Appellants,

v.

AVCO CORPORATION and Siouxland Implement Co., Appellees.

No. 90–1072.

Supreme Court of Iowa.

Nov. 20, 1991.

Rehearing Denied Dec. 30, 1991.

Randy V. Hefner, Adel, Martin E. Spellman and Thomas L. Spellman, Perry, and Brett I. Anderson, Des Moines, for appellants.

Kevin M. Reynolds and Maureen Roach Tobin of Whitfield, Musgrave & Eddy, Des Moines, for appellee Avco Corp.

Robert R. Eidsmoe of Eidsmoe, Heidman, Redmond, Fredregill, Patterson & Schatz, Sioux City, for appellee Siouxland Implement Co.

CARTER, Justice.

Plaintiff Kenneth Hillrichs, who was injured when he became entangled in grain harvesting machinery, appeals from an adverse judgment in his products liability action. Kenneth's wife and children, who are also plaintiffs in the action, similarly appeal. Since the legal issues raised affect all plaintiffs in similar fashion, we will, for convenience, refer only to Kenneth as plaintiff. The defendants are Avco Corporation, the manufacturer of the "New Idea Unisystem" corn picker that caused Kenneth's injuries, and Siouxland Implement Co., an implement dealer that sold only the power unit attached to the corn picker. The defendants will be referred to by name or as "manufacturer" and "dealer."

Plaintiff is a thirty-nine-year-old farmer who has farmed most of his life. In the fall of 1986, he decided to purchase a used "New Idea Unisystem." This machinery consists of three parts: a power unit, which is the tractor the operator drives through the field; a "stripper plate" corn head, which attaches to the front of the power unit; and a husking bed, which is mounted on the rear of the power unit. As the unisystem is driven through the rows of corn, the corn head strips the ears from the stalks, which fall into the husking bed.

Plaintiff purchased a used corn head and husking bed from another farmer. These items had been manufactured by Avco in 1966. He purchased a compatible used New Idea power unit from Siouxland, an Avco dealer. The power unit had been manufactured by Avco in 1967. Plaintiff contacted an employee of Siouxland to see if he could bring the corn head and husking unit to the dealership shop for assistance in connecting these components to the power unit. Such assistance was arranged, and a Siouxland mechanic assisted plaintiff in mounting the husking bed on the power unit and attaching the corn head.

The husking bed consists of twelve thirty-six-inch-long rollers, two and seven-eighths inches in diameter. Six rollers made of cast iron are paired with six rubber rollers that spin in the opposite direction. As the ears of corn pass over the rollers, the husks and stalks are pulled between the rollers and deposited below the machine.

On November 20, 1986, plaintiff was picking corn with an assistant. The husking bed of the unisystem had on occasion become plugged with corn husks. On one such occasion, while his assistant was hauling a load of corn, plaintiff disengaged the

power to the husking bed and attempted by hand to free the husking rollers of plugged husks. Unable to unplug the husking bed, he engaged the power to the husking bed. He then reached into the husking bed and the glove on his right hand became entangled in the rollers.

The rapidly spinning rollers trapped plaintiff's hand in a "pinch point." Unless resisted, the resulting forces would have drawn plaintiff's hand further into the machine. Plaintiff was trapped in this manner for approximately one-half hour until his assistant returned and shut off the machine. The injury that he sustained resulted in amputation of four fingers and permanent disfigurement of his right hand.

Plaintiff brought this action against the manufacturer, Avco; and the dealer, Siouxland, claiming negligence, strict liability, and breach of implied warranties. Avco pleaded the defenses of comparative fault and state of the art under Iowa Code section 668.12 (1989). Siouxland claimed the immunity of a wholesaler, retailer, distributor, or seller of a product under Iowa Code section 613.18 (1989).

At trial, plaintiff attempted to show that the husking bed was unreasonably dangerous because it lacked an interlocking shield over the rollers that would disengage the power source when the shield was removed. He further sought to show that the unit was unreasonably dangerous because it lacked an emergency shut-off device that could be utilized when someone became entangled in the machine. He proposed jury instructions and verdict forms that would require the jury to apportion his damages between the initial entanglement in the rollers and any enhanced injury caused by the inability to promptly shut off the power. The trial court refused to instruct in this manner.

The court submitted claims against Avco based on strict liability, breach of implied warranty, and alleged negligence in designing the corn picker assemblage and in failing to warn of its dangerous propensities. The court submitted claims against Siouxland only on alleged negligence in failing to warn of the cornhusking assemblage's dangerous propensities. In special verdicts, the jury initially rendered a fault allocation of seventy percent to plaintiff, twenty-five percent to Avco, and five percent to Siouxland. However, the jury also answered "no" to the interrogatory asking whether defendants' fault was a proximate cause of plaintiff's injuries. Based on this apparent inconsistency in the verdict forms, the court would not accept the verdicts. It required the jury to reconsider the issues in accordance with the instructions. After some further deliberation, the jury returned an amended verdict form finding the plaintiff one hundred percent at fault for his injury.

## I. *Liability of Defendant Implement Dealer.*

We first consider the issues affecting liability of the implement dealer, Siouxland. Although requested to do so by plaintiff, the district court refused to submit the dealer's liability to the jury under theories of strict liability in tort or breach of implied warranty of merchantability. Plaintiff asserts that this was error.

Issues were submitted to the jury concerning the alleged negligence of the dealer, and the jury found that Siouxland was free from fault. Plaintiff urges that the district court erred in the trial of the negligence issues by excluding his proffered expert testimony concerning Siouxland's failure to meet the applicable standard of care and in instructing the jury on that standard. After considering all of plaintiff's contentions, we find that they provide no basis for reversing the judgment in favor of Siouxland.

A. *Strict liability and implied warranty issues.* Plaintiff argues that in not submitting issues of strict liability and breach of implied warranty against the dealer, the court misapplied Iowa Code section 613.18. He points out that this statute only applies to a person "who is not the assembler, designer, or manufacturer." Plaintiff argues that this statute is inapplicable because Siouxland did perform services in the assembly of the husking bed and its power unit.

■ We conclude that the district court properly refused to submit issues involving Siouxland's fault under theories of strict liability and breach of implied warranty irrespective of the applicability of section 613.18. Although privity of contract is not essential in establishing liability under either of these theories, both strict liability and liability based on breach of implied warranty are only visited upon a "seller" of the product causing injury.[1] Siouxland only sold the power unit, for which no defect or breach of warranty has been claimed. It did not sell the husking bed or corn head nor did it sell the assembled power unit, husking bed, and corn head system. It only provided mechanical services to connect the power unit to the other corn picker components purchased from another source. Given these circumstances, we believe no basis exists for applying the doctrines of strict liability or breach of implied warranty.

■ B. *Exclusion of expert testimony concerning defendant implement dealer's negligence.* On the negligence claims submitted against Siouxland, plaintiff proffered expert testimony that this defendant was negligent in not warning plaintiff concerning the hazards of the harvesting equipment that caused his injuries. In particular these experts suggested that, when the equipment was in Siouxland's shop, it should have affixed warning stickers to the husking bed. This testimony was based in part on letters to the defendant dealer from the defendant manufacturer with respect to warning labels for other equipment models with similar mechanical functions. The trial court refused to allow the jury to consider this expert testimony.

We find no reversible error in the exclusion of this testimony. This is not a case such as *Nichols v. Westfield Industries*, 380 N.W.2d 392, 398 (Iowa 1985), in which negligence of an equipment dealer was predicated on failure to notify equipment purchasers about the manufacturer's recall program. In *Nichols*, the defendant dealer had sold the auger that injured the plaintiff in that case. The recall program antedated the *Nichols* plaintiff's purchase of the auger from the party to whom the dealer had sold it. In contrast to the situation presented in *Nichols*, the implement dealer in the present case had never sold the corn picker components with the open and unguarded moving parts that caused plaintiff's injury.

In *Anderson v. Glynn Construction Co.*, 421 N.W.2d 141, 143–44 (Iowa 1988), we recognized that a mere furnisher of services is not liable for a dangerous condition that it neither created nor aggravated unless it somehow acts to mask the danger. In the present case, Siouxland neither created nor aggravated the dangerous condition that inhered in the husking bed nor did its act mask that dangerous condition.

The defendant in *Anderson* had installed an open and unguarded auger system in dangerous proximity to an open and unguarded hopper box on the customer's premises. Although we held that this gave rise to a duty to warn under the doctrine espoused in Restatement (Second) of Torts section 388, this conclusion was predicated on the defendant's being a supplier of a dangerous chattel which caused the claimant's injuries. As we have indicated, that circumstance was not shown in the present case.

The trial court did submit the case to the jury in a manner that permitted a finding that Siouxland was negligent in failing to warn plaintiff of the dangerous propensities of the husking bed. In so doing, it treated plaintiff more favorably than he was entitled to be treated under applicable law. Under these circumstances, there was no prejudice in excluding the proffered expert testimony.

1. Restatement (Second) of Torts § 402A establishes strict liability with respect to "[o]ne who *sells* any product in a defective condition unreasonably dangerous to the user or consumer." (Emphasis added.) Liability for breach of an implied warranty of merchantability is visited upon "sellers" under Iowa Code § 554.2314 (1989). *Van Wyk v. Norden Labs.*, 345 N.W.2d 81, 84 (Iowa 1984) (warranty applies to goods purchased from a merchant). This was also true under prior case law. *See State Farm Mut. Auto. Ins. Co. v. Anderson–Weber, Inc.*, 252 Iowa 1289, 1301, 110 N.W.2d 449, 456 (1961).

## II. *Liability of Manufacturer Under Theories Submitted to the Jury.*

The issues on appeal that affect the liability of the manufacturer, Avco, include both theories of liability that were submitted to the jury and those that were not. Plaintiff's claims of error on the legal theories that were submitted are: (1) that the court improperly excluded evidence of similar accidents, and (2) that the court should have instructed the jury that a product manufacturer is held to the standard of diligence of an "expert in the field." We have considered both of these contentions and conclude that they do not warrant a reversal.

■ The evidence of similar accidents was offered by the plaintiff to show knowledge by Avco of the hazards that its product presented. The trial court did admit evidence of two similar accidents for this purpose. It excluded proffered evidence of several other occurrences on the ground that the foundational showing of sufficient similarity was inadequate. Significantly, Avco conceded knowledge of the hazard in the testimony of its principal witness. We fail to find any abuse of discretion in the trial court's ruling or any noticeable prejudice to the plaintiff's case from the exclusion of this evidence.

■ On the issue concerning the "ordinary care" instruction, the standard instruction was given as framed in Iowa Uniform Civil Jury Instruction 700.2. This instruction is designed to be generic. It refers to the care that "a reasonably careful person would use *under similar circumstances.*" (Emphasis added.) It thus describes a flexible duty that adjusts to both the status of the actor and the circumstances that the actor faces. These are matters that may be adequately conveyed to the jury by the evidence and by argument of counsel under the instruction that the court gave.

## III. *Liability of Manufacturer Under Legal Theories Not Submitted to the Jury.*

Plaintiff asserts that, even if Avco is not liable under strict liability or negligence theories for injuries caused by his immediate entrapment in the machine, liability should be recognized for enhanced injuries that could have been preventable by an accessible shut-off switch. He asserts that the trial court's refusal to allow the jury to consider this theory of liability was reversible error.

The theory that a product manufacturer should be liable for aggravated injuries caused by faulty product design was first developed in automobile "second collision" or "crashworthiness" cases. In *Larsen v. General Motors Corp.*, 391 F.2d 495, 502 (8th Cir.1968), the court held that automobile accidents are readily foreseeable, and therefore, automobile manufacturers must use reasonable care in designing autos to protect occupants from foreseeable second collisions of the occupants with the interior of the auto. Although a design defect does not cause the original accident, "the manufacturer should be liable for that portion of the damage or injury caused by the defective design over and above the damage or injury that probably would have occurred as a result of the impact or collision absent the defective design." *Id.* at 503.

The enhanced injury theory as applied to automobile manufacturers has been widely recognized. *See Tafoya v. Sears, Roebuck & Co.*, 884 F.2d 1330, 1337–38 (10th Cir. 1989). Our court of appeals recognized the theory as applied to a semitruck tractor in *Wernimont v. International Harvestor Corp.*, 309 N.W.2d 137, 140 (Iowa App. 1981).

The enhanced injury theory has been extended to products other than automobiles. *See, e.g., Tafoya v. Sears, Roebuck & Co.*, 884 F.2d 1330 (10th Cir.1989) (riding lawnmower); *Roe v. Deere & Co.*, 855 F.2d 151 (3d Cir.1988) (agricultural tractor); *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165 (3d Cir.1981) (front-end loader). In *Farrell v. John Deere Co.*, 151 Wis.2d 45, 443 N.W.2d 50 (1989), the court applied the enhanced injury theory to a claim involving entrapment in the husking bed of a corn picker.

■ We believe that the court of appeals' recognition of the enhanced injury doctrine in *Wernimont* was merely a correct application in a particular context of well-established elements of Iowa tort law that permit recovery of damages for injuries caused by the conduct of another that the law identifies as tortious. These principles mandate that an injured party's right of recovery extend to all injury or degree of injury that would have been prevented through the tortfeasor's exercise of the proper standard of care.

■ Avco argues that, even if we recognize a right of recovery for enhanced injuries in a proper case, this is not such a case. It contends that plaintiff did not offer sufficient evidence of enhancement to have such a claim submitted to the jury.

In *Wernimont* the court of appeals listed three elements of a prima facie enhanced injury claim:

(1) proof of an alternative safer design, practicable under the circumstances; (2) what injuries would have resulted had the alternative safer design been used; and (3) the extent of enhanced injuries attributable to the defective design.

*Wernimont*, 309 N.W.2d at 140–41. These elements were originally enunciated in *Huddell v. Levin*, 537 F.2d 726, 737–38 (3d Cir.1976).

The plaintiff called two engineering experts who testified to the feasibility of an emergency stop device that would permit an operator entangled in the husking bed to stop the machine immediately. They testified that such devices were in use in other types of farm machinery with exposed movable parts at the time the Avco husking bed was manufactured. This expert testimony indicated that, because the husking rolls are "nonaggressive," in that they are designed only to remove husks without damaging the grain, serious injury could be prevented in the event of entanglement if the machine could be quickly shut down. These experts opined the additional cost of a shut-off device would be between twenty-five and fifty dollars.

Plaintiff's evidence that his injuries were enhanced by reason of Avco's faulty design included the testimony of an orthopaedic surgeon that opined that the longer his hand was in the machine the more the injury progressed. Plaintiff testified that immediately after his hand was trapped the rollers began burning his skin off. He had to resist the machine's constant pull until it had removed all the flesh from his fingers. He stated that this took several minutes. He testified without objection that a shut-off device would have made a tremendous amount of difference—"I might have ended up with broken fingers."

We believe that plaintiff's proof, if believed, was sufficient for a jury to find that he sustained additional injury and pain and suffering because of the inability to shut the machine off. The extent of the enhanced injury is certainly not fixed to any degree of definiteness. We do not believe, however, that the degree of uncertainty is so great as to preclude the jury from quantifying the enhanced loss within a reasonable margin of error.

We have recognized that recovery should be denied when it is uncertain or speculative that any damage has actually occurred. Damages may be awarded, however, when the only dispute is the amount of damages and the evidence affords a reasonable basis for estimating the loss. *Ellwood v. Mid States Commodities, Inc.*, 404 N.W.2d 174, 183 (Iowa 1987). In determining a just and reasonable estimate of damages based on relevant data, a jury may act on probable and inferential, as well as direct and positive proof. *United Elec. Radio & Mach. Workers of Am. v. Oliver Corp.*, 205 F.2d 376, 389 (8th Cir.1953) (applying Iowa law). We believe that the second and third elements, which *Wernimont* established for enhanced injury damages, must be applied in a manner consistent with these principles.

Although the issue is close, we conclude that plaintiff's enhanced injury claim should have been submitted to the jury in the present case. We believe, however, that application of the *Wernimont* standards to the present fact pattern will make the strict liability claim depend on virtually

the same elements of proof as are required to establish the negligence claim.[2] Consequently, we hold that only the negligence claim should be retried and only with respect to Avco's liability, if any, for the enhanced injuries.[3]

■ Although plaintiff suggests that any percentage of fault that might be assigned to him with respect to the initial entanglement in the machinery may not be assessed to him on the trial of his enhanced injury claim, we disagree with that contention. The fault of the plaintiff, if any, in becoming entangled in the machinery would be a proximate cause of the enhanced injury as well as the initial injury. On retrial of the negligence claim, the jury should be so instructed.

## IV. *State-of-the-Art Defense.*

As a final matter, we wish to discuss the method by which the district court submitted the state-of-the-art defense provided in Iowa Code section 668.12. The court merely instructed as to the basic elements of that statute and told the jury that if those elements were established by Avco no percentage of fault should be assigned to that defendant. Unfortunately, the court did not submit a special verdict form on the state-of-the-art defense. Had it done so, we would have known if the jury's ultimate assessment of percentages of fault was dictated by its belief that the state-of-the-art defense had been estab-lished. If this had been the basis for the jury's verdict, it might have greatly changed the issues on appeal and perhaps prevented a retrial of any issue. Because a special verdict was not submitted, we have no way of knowing the basis on which the jury arrived at the relative percentages of fault.

■ We believe it is preferable, in the absence of compelling reasons not to do so, that issues involving the state-of-the-art defense under section 668.12 be submitted by way of special verdict. Rather than giving only a general instruction on state of the art, the court should instruct that the defendant must establish this defense with respect to the specific claims that the plaintiff has made. Preferably, the instructions should be cast in an "even if" format. The jury should be advised that, even if the plaintiff has established a particular design defect, no percentage of fault should be assigned to the manufacturer if that party has established that the design was consistent with the state of the art.[4]

For reasons previously stated, we affirm the district court's judgment as to the claims against defendant Siouxland. The judgment is reversed as to the claims of all plaintiffs against the defendant Avco for retrial of the enhanced injury claim only. The case is remanded to the district court for that purpose. Costs on appeal are assessed seventy percent to Avco and thirty percent to the plaintiffs.

2. We make this determination only with respect to the present case. We note, however, a growing number of courts and commentators have found that, in cases in which the plaintiff's injury is caused by an alleged defect in the design of a product, there is no practical difference between theories of negligence and strict liability. *See, e.g., Jones v. Hutchinson Mfg., Inc.,* 502 S.W.2d 66 (Ky.1973); *Prentis v. Yale Mfg. Co.,* 421 Mich. 670, 365 N.W.2d 176 (1984); *Lancaster Silo & Block Co. v. Northern Propane Gas Co.,* 75 A.D.2d 55, 427 N.Y.S.2d 1009 (1980); *Foley v. Clark Equip. Co.,* 361 Pa.Super. 599, 523 A.2d 379 (1987); Birnbaum, *Unmasking the Test for Design Defect: From Negligence [to Warranty] to Strict Liability to Negligence,* 33 Vand. L.Rev. 593 (1980); Hoenig, *Product Designs and Strict Tort Liability: Is There a Better Approach?,*

8 Sw.U.L.Rev. 109 (1976); Miller, *Design Defect Litigation in Iowa: The Myths of Strict Liability,* 40 Drake L.Rev. 465 (1991); Powers, *The Persistence of Fault in Products Liability,* 61 Tex.L.Rev. 797 (1983).

3. When the error in the trial court affects only some of the issues, a new trial may properly be limited to those issues. *Powell v. Khodari–Intergreen Co.,* 334 N.W.2d 127, 132 (Iowa 1983).

4. The "even if" format will facilitate the jury's consideration of the state-of-the-art issue within the context of the specific claims in the case. We believe this is preferable to requiring the jury to consider the state-of-the-art defense first and to go no further if that defense has been established.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

All Justices concur except SCHULTZ, J., who takes no part.