# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1996

_____

| | | |
|---|---|---|
| Jennifer L. Giles, Individually and as | * | |
| Mother and Next Best Friend; | * | |
| Amber L. Giles, a minor; | * | |
| Thomas L. Giles, | * | |
| | * | |
| Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| Miners, Incorporated, doing business | * | Appeal from the United States |
| as Super One Foods; Hussman | * | District Court for the |
| Corporation, also known as | * | Southern District of Iowa. |
| American Refrigeration Products, | * | |
| also known as IC Industries Company, | * | |
| | * | |
| Appellees. | * | |
| | * | |
| Iowa Trial Lawyers Association, | * | |
| | * | |
| Amicus on Behalf of Appellant. | * | |

_____

Submitted: November 13, 2000

Filed: March 12, 2001

_____

Before BOWMAN, HEANEY, and BEAM, Circuit Judges.

_____

HEANEY, Circuit Judge.

Amber Giles and her parents, Jennifer and Thomas Giles, brought a products liability action for a frostbite injury that Amber sustained while retrieving Popsicles from a spot-merchandising freezer manufactured by Hussman Corporation and located in a Super One Foods store owned by Miners, Inc. After excluding the testimony of the plaintiffs' expert witness, the district court granted summary judgment to the defendants.[1] We affirm as to Hussman, because the plaintiffs have failed to make an adequate showing on their design-defect claims. We reverse as to Miners on the negligence claim, however, because there has been sufficient evidence presented to create a jury question on the foreseeability of the accident.

## I. BACKGROUND

On July 8, 1996, Amber, who was then twelve years old, was shopping with her mother at the Super One grocery store. Amber's mother asked her to retrieve some Popsicles that were arranged in a Hussman spot-merchandising freezer. As she reached inside to get the Popsicles, Amber's fingers stuck to the metal wall of the freezer. Precisely how this happened is disputed by the deposition testimony; Amber might have merely brushed her fingers against the freezer wall or she might have been playing with the boxes of Popsicles. In any event, Amber and her mother were unable to free her hand. A store employee made three trips to get water to pour on her fingers before they came loose. Amber's fingers were cherry red; she had received frostbite burns from the freezer.[2]

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

[2]The extent of Amber's injuries is disputed, but is not material for purposes of this appeal.

The spot-merchandising freezers of the type at issue in this case have been manufactured and sold by Hussman since 1985. They are movable, and are powered by an electrical plug-in to a 110-volt outlet. Ordinarily, the customer is protected from frostbite by the buildup of a protective layer of frost on the sides of the freezer, which takes between thirty and sixty minutes to form. The design of the freezers is regulated by the Federal Department of Health using standards issued by the American National Standards Institute, the National Sanitation Foundation, and Underwriters Laboratories.

The plaintiffs' product liability action against Hussman is premised on a design-defect theory for failure to install a mesh guard that would prevent any touching of the sides of the freezer. See Bingham v. Marshall & Huschart Mach. Co., 485 N.W.2d 78, 79 (Iowa 1992) (describing various theories used in products liability action). The action against Miners is based on the theory that the store was negligent in placing the freezer on the sales floor before a protective coating of ice could form on the freezer walls and leaving it on the sales floor after the plug had been disconnected. According to the plaintiffs, Miners could therefore have foreseen that injury would result.

## II. ANALYSIS

A. Hussman's Liability for Defective Design

1. Exclusion of Expert Testimony

The plaintiffs argue that the district court abused its discretion in excluding the testimony of their expert, Dale Gumz. We disagree. The admission of expert testimony lies within the broad discretion of the district court and will not be disturbed absent an abuse of discretion. See Peitzmeier v. Hennessy Indus., Inc., 97 F.3d 293, 296 (8th Cir. 1996). Under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589-92 (1993), the district court acts as "gatekeeper" to screen expert testimony

for relevance and reliability. See also Jaurequi v. Carter Mfg. Co., 173 F.3d 1076, 1082-83 (8th Cir. 1999) (citing Fed. R. Evid. 702).

In this case, the district court's application of the Daubert factors to the testimony regarding the proposed guard was within its discretion. Gumz proposed to testify that the freezer was unreasonably dangerous without a mesh safety guard, which would attach with duct tape to the freezer wall. The plaintiffs argue that because Gumz's testimony regarding the safety guard involved principles of engineering, not novel scientific issues, the district court erred in applying the Daubert factors in determining its admissibility. We have previously rejected such an argument, however, concluding that "the law grants the trial judge broad latitude to determine whether the Daubert factors are, or are not, reasonable measures of reliability in a particular case." Jaurequi, 173 F.3d at 1082 (quoting Kumho Tire Co. v. Carmichael, 119 S. Ct. 1167, 1176 (1999)) (internal quotation marks omitted).

Upon application of the Daubert factors to the testimony in this case, it is clear that the district court also did not abuse its discretion in excluding Gumz's testimony. As in other cases in which expert testimony on alternative design was excluded, see, e.g. Pestel v. Vermeer Mfg. Co., 64 F.3d 382, 384 (8th Cir. 1995), the district court found that the expert testimony lacked sufficient indicia of reliability. Reviewing Gumz's deposition testimony carefully, we note that there was no indication that Gumz had analyzed how the proposed safety guard would interact with the freezer's proper functioning. Further, it appears that Gumz's mesh insertion would violate government and industry design standards, which require a sanitary, easily cleanable surface, rather than one that allows the growth of mold and bacteria. (Jt. App. at 60).

2. Summary Judgment Motion

The plaintiffs contend that even if Gumz's testimony is inadmissible, the district court erred in granting Hussman summary judgment. We cannot agree, because the

-4-

plaintiffs have failed to produce evidence that the freezer was unreasonably dangerous. As the manufacturer has designed it, the buildup of frost prevents any significant risk of injury from frostbite.

Under Iowa law, recovery for a design defect under either a strict liability or negligence theory requires "proof of unreasonable danger." Chown v. USM Corp., 297 N.W.2d 218, 220 (Iowa 1980). The Iowa courts have used both a "consumer expectations" and a "risk/utility" test in defining what constitutes an unreasonable danger. See Fell v. Kewannee Farm Equip. Co., 457 N.W.2d 911 (Iowa 1990).

Based on the record before us, the plaintiffs have not demonstrated any such unreasonable danger inherent in the design of the freezer. Although Iowa law does not appear to require expert testimony for recovery in a products liability action, the plaintiff must supply sufficient evidence to satisfy the trial court that the jury, with its common knowledge, could reasonably find an alternative design to be practical and feasible. See Wernimont v. International Harvestor Corp., 309 N.W.2d 137, 141 (Iowa App. 1981).

Here, even if Gumz's testimony had been admitted, the plaintiffs did not have sufficient evidence to create a fact issue as to whether such an alternative design was feasible. The freezer was designed to be used with a protective frost overlay. With this frost buildup, there was no significant risk of injury. Therefore, the district court properly granted Hussman summary judgment on the design-defect claims.

B. Miners's Liability

Although it is a close question, we believe that the evidence plaintiffs presented was sufficient to generate a fact question as to whether Miners could foresee that an accident would occur, and thus whether Miners could be negligent. See Gremmels v. Tandy Corp., 120 F.3d 103, 105 (8th Cir. 1997) (listing elements required to recover

in negligence action under Iowa law); <u>Marcus v. Young</u>, 538 N.W. 2d 285, 288 (Iowa 1995) (same).

The day after Amber's injury, her mother spoke with the store manager, who stated that the freezer should have had an ice buildup on it so that the accident would not have happened. Similarly, the store's frozen food manager stated that he would not want to place his hand on the freezer wall before the protective layer of frost had built up. The following exchange occurred at the frozen food manager's deposition:

> Q:    Would you want to put your hand on that wall, just you, yourself, before it's frosted up and after it's been turned on a while, and hold it there?
>
> A.    I wouldn't hold it there.
>
> Q.    Why not?
>
> A.    I don't want to freeze my hand.
>
> Q.    Were you aware . . . that [a] hand on there before it frosts up, that it could get frostbitten or froze up?
>
> A.    I think I thought it could probably happen.

(Jt. App. at 577). The store manager also admitted that a frostbite injury was possible.

Further, the frozen foods manager testified that the freezer had been positioned in such a way that the electric cord could easily be pulled out inadvertently by the carts of other shoppers. The freezer would then defrost, and, once the freezer was plugged in, it would take thirty to sixty minutes for the frost coating to form again. Another store employee estimated that the plug would come loose approximately twice a week,

and that when that happened, the employees would "just go plug it back up." (Jt. App. at 412).

Miners argues that it was unaware of any incident in which anyone had become stuck to the freezer wall, and that hundreds of children in their store had been seen picking at or playing with the frost buildup on the freezers without incident. Miners argues that because an accident like Amber's had never happened before, it was unforeseeable and thus not actionable.

It is this very question of foreseeability, however, that is disputed in this case. See W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 43 (5th ed. 1984) ("If one could not reasonably foresee any injury as the result of one's act . . . there would be no negligence, and no liability."). That this is the first reported accident with a defrosted freezer does not necessarily mean that the accident was unforeseeable. To adopt Miners's position would mean that, no matter how careless a tortfeasor had been the first time an accident happened, it would be excused. Miners's position is simply another way of restating the now overruled tort law chestnut that "every dog gets one bite." See, e.g. Bauman v. Auch, 539 N.W.2d 320, 324-25 (S.D. 1995); Maxwell v. Fraze, 344 S.W.2d 262, 264 (Mo. Ct. App. 1961). It is not a complete defense to assert that an injury has never happened before, should the facts and circumstances indicate that the defendant should nevertheless have foreseen that injury could result.

Here, the testimony of the store manager and the frozen food manager has generated a fact question in regard to whether Miners could have foreseen Amber's injury, and, thus, whether Miners was negligent. Miners was aware that young children would be among those likely to retrieve food items from the freezer. The store manager testified that one's hands could stick to the wall of the freezer if no protective coating of frost had formed. Reasonable minds could disagree as to whether Miners should have foreseen that a child could receive frostbite burns if there was no frost

covering the freezer walls.  Cf. City of Cedar Falls v. Cedar Falls Community Sch. Dist., 617 N.W.2d 11, 16-17 (Iowa 2000) (holding that question of whether golf cart with key in ignition posed foreseeable danger to children in context of school field trip was question for jury).   Further, reasonable minds could differ as to whether it was negligent to place the freezer on the sales floor without the frost overlay or to leave the freezer there after the plug had been disconnected, the freezer had defrosted, and the frost had dissipated.   As these matters remain factually disputed, the plaintiffs' negligence claim against Miners survives summary judgment.

## III.  CONCLUSION

We affirm the district court's grant of summary judgment to Hussman, because the plaintiffs have failed to make an adequate showing on their design-defect claims. However, we reverse as to Miners on the negligence claim because there has been sufficient evidence presented about the defrosting of the freezer to create a jury question on the foreseeability of the accident.

BEAM, Circuit Judge, concurring and dissenting.

I would affirm on all issues.  In my view, there is insufficient evidence that Miners could reasonably have foreseen the probability of a patron receiving a frostbitten fingertip in the manner alleged by the appellants.  The deposition testimony set forth by the court, ante at 6, simply states the unremarkable proposition that the store manager acknowledges that if you hold a finger against a freezer wall (or against a frost build-up upon a freezer wall for that matter) you may experience frostbite.  That is clearly not what is purported to have happened here.

The court also discusses at length the inferences that can be drawn from the happening of a "first time accident."  The cases cited are simply inapposite given the

facts of this case. The unrefuted evidence available to the trial court was that there are thousands of this freezer type in use for "decades" without the occurrence of a similar accident.[3]

The trial court was correct in its rulings. Accordingly, I dissent from that portion of the court's opinion that remands the case for a trial.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]The evidence established that this manufacturer alone has sold between 42,000 and 70,000 of this exact model freezer since 1985 without a single reported incident of a hand or finger sticking to the wall as alleged in this case and that the manufacturer was not aware of any report of a similar incident in the entire commercial refrigeration industry. The district court found that there was no "evidence indicating that [Miner's] knew or should have known" of a frostbite danger. Giles v. Miners, Incorporated, No. 4-97-CV-90488, slip op. at 15 (S.D. Iowa, May 11, 1999). I agree with this finding.